# Delano *v.* Keiser, Appellant.

*Coal—Removal of—Contracts—Breach—Defense—Counterclaim —Evidence.*

In an action for labor done in removing coal from a "coal bank" under a written contract, the affidavit of defense, averred that the amount of coal removed was less than that claimed by the plaintiff.

In such case, evidence was admissible that the plaintiff had hauled rock and waste materials which he had included in his charges for carrying coal. Such a defense went to the merits of the action and need not be pleaded as a set-off or counterclaim, but was admissible in the proceedings to dispute the plaintiff's charge.

Argued December 2, 1924. Appeal, No. 42, Oct. T., 1924, by defendant, from judgment of C. P. Schuylkill Co., Nov. T., 1922, No. 566, on verdict for plaintiff in the case of E. W. Delano v. George M. Keiser. Before OR-LADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

468, (1925).]          Opinion of the Court.

Assumpsit to recover on the written contract. Before
BERGER, J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiff for $908.89 and judgment there-
on. Defendant appealed.

*Errors assigned* were various rulings on evidence, the
charge of the court and refusal to grant a new trial.

*John F. Whalen,* and with him *George Ellis,* for ap-
pellant.

*J. O. Ulrich,* for appellee.

OPINION BY HENDERSON, J., February 27, 1925:

This action grows out of a contract in writing between
the plaintiff and defendant. The defendant owned what
is described in the contract as "coal banks" on property
leased by him in the County of Schuylkill. Having a
breaker and washery about 3,800 feet west of the loca-
tion of the coal banks and desiring to use these banks at
the breaker, he entered into the contract referred to. It
provided, among other things, as follows: "The amount
of coal to be moved as aforesaid is approximately 150,-
000 tons, more or less, and is to include all the coal
west of the above described road leading from Yorkville
to Llewellyn and east of the powder house about 1,000
feet west of the above mentioned road." The plaintiff
was to furnish the appliances for moving the coal and as
compensation for such service was to receive "the sum
of 40c per ton for each and every ton of 2,240 pounds
each of coal mined, carried and hauled by the party of
the second part from the coal banks west of the road
leading from Yorkville to Llewellyn." After the plain-
tiff's undertaking had been in part performed, he threw
up the contract and removed his implements from the
premises on September 19, 1922, owing to a disagree-

ment with the defendant with respect to the amount of compensation to which he was entitled. His action is for a balance claimed for work done under the contract. The statement of claim sets forth the number "of tons of coal removed during various periods named" and claims compensation at the rate of 40c "for each ton of coal removed and delivered." The affidavit of defense denied that plaintiff had delivered the quantity of coal alleged, and averred that the smaller quantity named in the affidavit was the correct amount. There was the further allegation that the plaintiff hauled in excess of 900 tons of rock, slate and clay, not a subject of the contract nor to be hauled under it. At the trial, the defendant offered to prove that notice was given by him that plaintiff must not move or deliver to the breaker anything but coal as provided in the contract; that plaintiff acted on this warning and refrained from delivering anything but coal to the breaker for some time, but later moved other material, rock and refuse matter, to the washery; this for the purpose of showing that both parties recognized the meaning of the agreement that only coal should be removed by the plaintiff to the washery. After objection made, the offer was enlarged by the proposition to show that prior to the 16th of August, 1922, deductions had been made from the amount claimed by the plaintiff on account of rock and other refuse matter; that the plaintiff was not paid for such rock and refuse material and that he accepted the payment after deduction so made. This was objected to by the plaintiff's counsel and the objection sustained on the ground that if the claim included something for which he, the defendant, was not liable, the duty was upon him to set it up in the nature of a set-off or counterclaim, and for the further reason that the declarations of the parties with respect to the contract could not be resorted to as an aid to construction. This ruling is the subject of the first assignment of error. As the contract was for the transportation of coal from what was described as a coal bank

in a particular location, and the cause of action is the price claimed for the delivery of a given number of tons of coal, and as the affidavit of defense contained a denial that such quantity had been transported, we do not regard the offer proposed in the nature of a set-off or counterclaim. It is an attempt to reduce the amount of the plaintiff's charge because of the inclusion in the tonnage of material not covered by the contract. Just what was the quality of the material to be removed only appears in the agreement. That it was regarded as coal by the parties is evident; that it contained material which was not coal may be assumed, but we think it is not a legal conclusion that everything on the defendant's lot could be transported whether it was fairly within the definition of coal or not. The use to be made of the product was well known by the plaintiff. He fully understood that the large quantity of rock alleged to have been hauled was worthless to the defendant, and unless it was so intermixed with coal as to warrant the conclusion that it must have been the intention of the parties that everything on the lease as located by the agreement was to be transferred, it would be a legitimate defense pro tanto to the claim that the amount hauled was less than that charged for. It may be that everything removed was part of the material which the defendant intended to use, but the contrary he had a right to show. The evidence does not disclose the condition of the coal bank or banks; whether part of the output was principally slate or rock or clay and therefore not fit for the defendant's use, does not appear. The greater part of it was evidently useful. If the plaintiff chose to transport many tons not fairly within the description of the contract, the defense offered could be introduced as we understand the pleadings. The offer is in diminution of the plaintiff's claim because of lack of consideration and does not propose a counterclaim or independent right of action. Conceding that the contract must be construed by the court, it does not follow

that it gives authority to the plaintiff to carry that which would not reasonably come within the description of coal, as the parties knew the subject with respect to which they were dealing. The first assignment is sustained.

The contract contained a provision for a penalty of $40 a day to be paid by the plaintiff as liquidated damages if he neglected and refused to haul to the point designated an average of 500 tons per day for each month. The defendant set up as a counterclaim the plaintiff's default and demanded the sum of $2,080 as liquidated damages for his failure to deliver coal from the 20th of September, 1922, to November 18, 1922. The court held that the clause in the contract provided for a penalty and not liquidated damages and rejected the defendant's counterclaim. Whether this view of the contract is correct or not, it is not questioned that the plaintiff abandoned the work and refused to proceed further with his undertaking. On that state of facts the defendant's remedy is for damages for breach of the whole of it instead of for monthly defaults. The provision for the penalty was intended to stimulate the plaintiff to promptness in the performance of the contract. It was not intended as a measure of damages to be recovered in case of a surrender or abandonment of it. The second assignment is overruled.

The 3d, 4th, 5th, 6th and 7th assignments relate to conclusions of the learned trial judge in his opinion on a motion for a new trial and need not now be considered. The first assignment having been sustained the judgment is reversed with a new venire.